# In the United States Court of Federal Claims

Consolidated Nos. 24-500C & 24-533C
(Filed: April 26, 2024)
**FOR PUBLICATION**

```
*************************************
SUPERIOR OPTICAL LABS, INC.,         *
                                     *
              Plaintiff,             *
                                     *
        v.                           *
                                     *
THE UNITED STATES,                   *
                                     *
              Defendant,             *
                                     *
           and                       *
                                     *
PDS CONSULTANTS, INC.                *
d/b/a PDS OPTICAL,                   *
                                     *
              Defendant-Intervenor.  *
                                     *
*************************************
*************************************
SUPERIOR OPTICAL LABS, INC.,         *
                                     *
              Plaintiff,             *
                                     *
        v.                           *
                                     *
THE UNITED STATES,                   *
                                     *
              Defendant,             *
                                     *
           and                       *
                                     *
PDS CONSULTANTS, INC.                *
d/b/a PDS OPTICAL,                   *
                                     *
              Defendant-Intervenor.  *
                                     *
*************************************
```

*John E. McCarthy, Jr.*, Crowell & Moring LLP, Washington, D.C., for Plaintiff. With him on briefs were *Zachary H. Schroeder* and *Issac D. Schabes*, Crowell & Moring LLP, Washington, D.C., and *Elizabeth Haws Connally*, Connally Law PLLC, San Antonio, TX.

*Joshua D. Tully*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him are *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, *Patricia M. McCarthy*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as *Natica Chapman Neely*, Trial Attorney, United States Department of Veterans Affairs Office of General Counsel, Washington, D.C.

*David S. Gallacher*, Kutak Rock LLP, Washington, D.C., for Defendant-Intervenor.

## OPINION AND ORDER

Superior Optical Labs ("Superior Optical") has filed two consolidated pre-award protests, both arising from rejection of its proposals for Department of Veterans Affairs optician services and eyeglasses manufacturing. *See* Compl. (ECF 1).[1] The offeror that Superior Optical alleges will receive the contracts, PDS Consultants, Inc. d/b/a PDS Optical ("PDS"), has moved to intervene. *See* Motion (ECF 12).[2] The government has not opposed, but Superior Optical has. *See* Opp. (ECF 16). I conclude that PDS may intervene as of right. *See* RCFC 24(a). In the alternative, I exercise my discretion to grant permissive intervention. *See* RCFC 24(b). The motion is therefore **GRANTED**.

Start with intervention as of right. *See* RCFC 24(a). This Court's Rules provide that the Court must grant a timely motion for intervention when the proposed intervenor:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

RCFC 24(a)(2). The Federal Circuit has broken that test into four elements:

> First, the motion must be timely. Second, the movant must claim some interest in the property affected by the case. This interest must be

---

[1] *See also* Compl. (ECF 1), No. 24–533 ("533 Compl."). Citations are to filings in the lead case unless otherwise noted.

[2] A motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." RCFC 24(c). No such pleading accompanies PDS's motion, but Superior Optical has not objected to the omission. This Court has sometimes considered a pleading unnecessary in bid protest interventions. *Mitchco Int'l, Inc. v. United States*, 149 Fed. Cl. 683, 685 n.2 (2020).

> "legally protectable"—merely economic interests will not suffice. Third, that interest's relationship to the litigation must be "of such a *direct* and *immediate* character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." Fourth, … the movant must demonstrate that said interest is not adequately addressed by the government's participation.

*Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Associations*, 695 F.3d 1310, 1315 (Fed. Cir. 2012) (quoting *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559 (Fed. Cir. 1989)) (citations omitted). "These requirements are construed in favor of intervention." *Id.* (quoting *Am. Mar. Transp.,* 870 F.2d at 1561).

The first and fourth of those elements are uncontested. As for timeliness, PDS moved to intervene before the deadline set by the Court's scheduling order (ECF 8), and more than a month before its motion for judgment on the administrative record would be due. The motion is therefore timely.

Nor does Superior Optical contest PDS's argument that because it is best positioned to defend its own proposals, explain PDS-specific aspects of the record, and pursue its own interest in fair procurements, the government would not adequately represent PDS's interests. As many decisions observe, in bid protests the government and the offerors have distinct interests. *Air Borealis Ltd. P'ship v. United States*, 162 Fed. Cl. 778, 782 (2022); *Mitchco Int'l, Inc. v. United States*, 149 Fed. Cl. 683, 685 (2020); *Winston-Salem Indus. for the Blind, Inc. v. United States*, 144 Fed. Cl. 644, 645 (2019); *Northrop Grumman Info. Tech., Inc. v. United States*, 74 Fed. Cl. 407, 418 (2006); *CHE Consulting, Inc. v. United States*, 71 Fed. Cl. 634, 635 (2006). Put simply, when the government acts as a market participant — not as the sovereign — its "specific litigation goals" differ from those of offerors. *Compare Wolfsen Land & Cattle*, 695 F.3d at 1316, 1318, *with Air Borealis*, 162 Fed. Cl. at 782; *Northrop Grumman Info. Tech.*, 74 Fed. Cl. at 418. The government wants to defend its procurement processes and receive contractual performance; the offerors want to receive an award and get paid for work. *Air Borealis*, 162 Fed. Cl. at 782.

That difference creates an incentive for the government to make decisions in litigation that are not in the offerors' best interests. *Cf. Wolfsen Land & Cattle*, 695 F.3d at 1317 (denying intervention because there was no "reason to believe the government would be unwilling to pursue some theory that [the proposed intervenor] would pursue"). If forced to choose, the government would defend its institutional interest in agency procurement processes instead of the offerors' business interests. "The government might deny procedural errors that [an offeror] would concede and defend as harmless. Or the government might concede deficiencies in [an offeror's] proposal that [the offeror] would not admit to." *Air Borealis*, 162 Fed. Cl. at 782. The

- 3 -

possibility of those conflicts should virtually always amount to "a compelling showing that [an offeror's] interests may not be adequately protected by the government[.]" *Wolfsen Land & Cattle*, 695 F.3d at 1316.[3]

The issue instead is whether PDS has enough of an interest in the cases to justify intervention. Briefly, PDS observes that Superior Optical has "previously attacked PDS's character and ability to perform" the contract in case No. 24-500C,[4] and that relief for Superior Optical could "potentially impact[] PDS's ability to receive an award, and also potentially increas[e] PDS's bid and proposal costs[.]" Mot. at 3. Superior Optical raises three arguments in response, which I reject in turn.

First, Superior Optical argues that PDS failed to specifically address whether its interest is "legally protectable," and therefore forfeited the issue. *See* Opp. at 3. That places form over substance. The relevant rule requires that PDS show that it "claims an interest relating to the property or transaction that is the subject of the action[.]" RCFC 24(a)(2); *Am. Mar. Transp.*, 870 F.2d at 1560. Courts have

---

[3] Some cases of this Court could be read as relying on a presumption that the government adequately represents the interests of offerors. *See Glob. K9 Prot. Grp., LLC v. United States*, No. 23-210, 2024 WL 1561386, at *24 (Fed. Cl. Apr. 11, 2024) (citing *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645, 656 (2004), *aff'd sub nom. John R. Sand & Gravel Co. v. Brunswick Corp.*, 143 F. App'x 317 (Fed. Cir. 2005); *Freeman v. United States*, 50 Fed. Cl. 305, 310 (2001); and *Anderson Columbia Env't, Inc. v. United States*, 42 Fed. Cl. 880, 883 (1999)). With all respect to my learned colleagues, in bid protests that presumption misapplies authorities such as *Wolfsen* and overlooks the important distinctions between the interests of the government and an offeror.

It is not enough to say that the government will defend against claims the proposed intervenor wants to oppose and resist relief the proposed intervenor wants to avoid. *See Glob. K9 Prot. Grp.*, 2024 WL 1561386, at *24. The Federal Circuit has explained that what really matters is the parties' precise *motivations* to raise particular arguments in their own ways. *See Wolfsen Land & Cattle*, 695 F.3d at 1317. Where a party and a proposed intervenor have distinct interests, the Federal Circuit does not evaluate whether a party's arguments ought to have satisfied a proposed intervenor, but whether the party and intervenor have different "incentives affecting decisions about how to conduct the litigation." *Apotex, Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d 1356, 1361 (Fed. Cir. 2015) (applying the Federal Rules of Civil Procedure); *see also Wolfsen Land & Cattle*, 695 F.3d at 1317.

That makes sense from the parties' perspective. Litigating a case involves innumerable decisions about what to emphasize and what to downplay; what to defend and what to concede; what to cite and what to omit; what to include and what to cut. Parties with different interests (*e.g.*, a bidder and a government agency) will make those calls differently, in light of privileged discussions with their own counsel. Many of the parties' preferences would be impossible to explain in court — let alone in advance of merits briefing, and without waiving a privilege or disclosing confidential information. Separately represented entities that were counterparties in the contracting process may not even be able to fully and transparently coordinate with each other over case strategy. A rough, high-level alignment of one litigant with another cannot possibly capture what goes on when parties and their lawyers present their cases. It is therefore unrealistic for the Court — an impartial outside adjudicator — to pronounce a party's litigation decisions good enough to suit a proposed intervenor, with different interests, sitting on the sidelines without a full chance to participate.

[4] When PDS moved to intervene, the complaints in both cases were under seal and redacted versions had not yet been filed. PDS relied on Superior Optical's submissions in the Government Accountability Office.

interpreted that requirement as having two parts: the interest must be both "legally protectable" and "direct and immediate." *Air Borealis*, 162 Fed. Cl. at 780 (emphasis omitted) (quoting *Am. Mar. Transp.*, 870 F.2d at 1561–62); *cf. United Keetoowah Band v. United States*, 480 F.3d 1318, 1324–25 (Fed. Cir. 2007). So does the case Superior Optical cites for PDS's supposed obligation to provide more detail. *See* Opp. at 3 (citing *Chippewa Cree Tribe of Rocky Boy's Rsrv. v. United States*, 85 Fed. Cl. 646, 654 (2009)). It is surely best practice for a proposed intervenor to address the two aspects of its alleged interest with specificity. *Wolfsen Land & Cattle*, 695 F.3d at 1315. Nonetheless, it is at least minimally acceptable for the intervenor to describe its interest and let this Court apply the relevant standards. Doing so carries litigation risks, but forfeiture is not one of them.

Second, Superior Optical argues that PDS, as an offeror, lacks a legally protectable, direct interest in pre-award protests. Opp. at 4. While interest in a contract is protectable, an offeror's interest in *receiving* a contract is usually contingent on a future award that may or may not happen. Contingent interests are not enough for intervention as of right, *see Klamath Irr. Dist. v. United States*, 64 Fed. Cl. 328, 331 (2005); *see also Am. Mar. Transp.*, 870 F.2d at 1561 (denying intervention "because of the uncertainty that other events will actually follow"), so merely being an offeror typically does not confer an interest direct enough to justify intervention in someone else's pre-award bid protest. *See* Opp. at 4–5 (citing *Vectrus Servs. A/S v. United States*, 164 Fed. Cl. 693, 707 n.14 (2023)); *see also Oak Grove Techs., LLC v. United States*, No. 23-1124C, 2023 WL 5030761, at *2 (Fed. Cl. Aug. 7, 2023). In the mine run of cases, that distinguishes intervention in pre-award protests from post-award protests, where intervention by successful offerors is routine. *Air Borealis*, 162 Fed. Cl. at 781 n.3.

But in *these* pre-award protests, Superior Optical has alleged that "eliminating Superior from the competition would effectively result in a sole source award to PDS." Compl. ¶ 63. The government will allegedly award the contracts to PDS as a matter of course. *Id.* ¶ 67 (alleging that the government "is effectively awarding PDS a sole source award"); *see also id.* ¶¶ 6, 73.[5] Put another way, although a contingent interest would not be enough for PDS to intervene, *see Klamath Irr. Dist.*, 64 Fed. Cl. at 331, Superior Optical has chosen to plead that PDS's interest is not contingent.

While it may be literally correct that Superior Optical "is not challenging any award that the [government] has made," Opp. at 4, Superior Optical's own pleadings thus show that PDS has more of an interest in these pre-award protests than the typical offeror. If Superior Optical wants to argue that PDS is "effectively" receiving

---

[5] The allegations in case No. 24-533C are similar. *See* 533 Compl. ¶¶ 6, 60, 62, 64, 71.

the awards already, *see* Compl. ¶ 67, it should also have to accept that PDS has an interest "effectively" comparable to that of a successful offeror in a post-award protest. Such an interest would be legally cognizable, direct, and immediate for much the same reasons as those in typical post-award protests. *Air Borealis*, 162 Fed. Cl. at 781 & n.3.

Third, Superior Optical claims PDS is factually mistaken that resolution of the protest could compromise PDS's business interests. Opp. at 6–7. If true, that might mean that PDS's interests are not legally protectable, or that they are insufficiently direct and immediate to justify intervention. *Air Borealis*, 162 Fed. Cl. at 780. But even aside from Superior Optical's allegation that awards to PDS are a foregone conclusion, other parts of the pleadings — which PDS did not have access to when it moved to intervene — tell a different story.

Superior Optical argues that it "does not challenge PDS' ability to compete" in the procurements at issue and that "PDS will remain in the same position" regardless of the outcome of the bid protest. Opp. at 6. That is mystifying: Superior Optical in fact alleges that the government should not proceed with awards to PDS because doing so would "increase[] the market share of PDS." *See* Compl. ¶ 68.[6] Why? Because Superior Optical accuses PDS of business misconduct that allegedly makes an increase of its market share inappropriate. *Id.* Superior Optical relatedly pleads that it is entitled to injunctive relief because sole-source awards to PDS would disserve the public interest. *Id.* ¶ 73. Contrary to the protestations in its opposition brief, Superior Optical seems to have alleged not merely that it should have the opportunity to compete for the contracts, but that PDS should *not* receive the award. It therefore appears at least plausible not only that resolution of the protests could directly compromise PDS's protectable interest in award of the contracts, but that Superior Optical is actively seeking an outcome that would limit PDS's opportunity to compete.

To be sure, it is not *certain* that a ruling for Superior Optical would directly harm PDS's interests in that way. The relevant rule, though, only requires that "disposing of the actions *may as a practical matter* impair or impede" PDS's ability to protect itself. RCFC 24(a)(2) (emphasis added); *Klamath Irr. Dist.*, 64 Fed. Cl. at 333.

Superior Optical's other arguments against the validity of PDS's interests fall flat for similar reasons. It claims that PDS's interests are only "reputational." Opp. at 6–7. Yet Superior Optical has argued that PDS's alleged misconduct is not just disreputable, but potentially disqualifying. Compl. ¶ 68. It characterizes PDS as

---

[6] The allegations in case No. 24-533C are similar. *See* 533 Compl. ¶ 65.

asserting a right to limit competition, Opp. at 7, but Superior Optical has arguably questioned PDS's own suitability for an award. Compl. ¶¶ 68, 73.

In short, because Superior Optical has characterized PDS as the likely awardee and questioned PDS's entitlement to the contract, PDS has enough of an interest in the case to intervene as of right. That is consistent with other pre-award bid protests permitting intervention as of right by offerors with more than the usual interest in the procurement. *See, e.g., Winston-Salem Indus. for the Blind v. United States*, 144 Fed. Cl. 644, 644–45 (2019); *Harmonia Holdings Grp., LLC v. United States*, 132 Fed. Cl. 129, 132 (2017); *SOS Int'l, LLC v. United States*, 127 Fed. Cl. 576, 579 (2016).

In the alternative, I exercise my discretion to allow PDS to intervene permissively. The Court may grant a timely motion for permissive intervention when a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact," taking into account whether intervention would "delay or prejudice the adjudication of the original parties' rights." RCFC 24(b). Superior Optical has not suggested that any delay or prejudice would result from permissive intervention. The only issue is whether PDS asserts a claim or defense that has a question in common with the underlying action.

The analogous federal permissive intervention rule "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Improvement Co.,* 310 U.S. 434, 459 (1940). The "defenses" contemplated by the rule are simply "the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (quoting *Diamond v. Charles,* 476 U.S. 54, 76–77 (1986) (O'Connor, J., concurring in part and concurring in judgment)). Here, to take one example, PDS could assert the defense that leaving PDS as the sole bidder after elimination of Superior Optical is not contrary to public policy. That defense directly opposes an allegation in the main action, *see* Compl. ¶¶ 6, 63, 67, 68, 73, and therefore shares issues of fact or law. *See ACME Worldwide Enters. v. United States*, 137 Fed. Cl. 469, 477–78 (2018); *Mitchco*, 149 Fed. Cl. at 684–85; *Honeywell Int'l Inc. v. United States*, 71 Fed. Cl. 759, 768 (2006).

As explained before, Superior Optical has characterized PDS as equivalent to a successful bidder. Although this Court usually allows successful offerors in bid protests to intervene as of right, it has also allowed permissive intervention where the offeror wishes to defend the procurement process and its own proposal. *See Air Borealis*, 162 Fed. Cl. at 782–83; *Mitchco*, 149 Fed. Cl. at 685.

Superior Optical responds that PDS's offer "has not been 'attacked and denigrated by Superior' in either of these protests," which are "narrowly focused on the protester's exclusion from bidding on the procurement." Opp. at 8. That, as should be obvious by now, is hard to reconcile with Superior Optical's pleadings. Superior Optical has claimed that PDS "has allegedly been 'given a monthly quota and pressured to upsell [eyeglass] frames to veterans,' potentially resulting in veterans paying significantly more money out of pocket," Compl. ¶ 68, and that "preventing this competition from being converted into a sole-source award to PDS" would "serve the public interest," *id.* ¶ 73. Those allegations most definitely "'attack[] and denigrate[]" PDS, and they go well beyond a "narrow focus[]" on Superior Optical's own entitlement to an award. I find Superior Optical's argument inexplicable, and I therefore reject it.

## CONCLUSION

For the foregoing reasons, the motion to intervene (ECF 12) is **GRANTED**.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge