<span style="color:red">**CORRECTED**</span>

# In the United States Court of Federal Claims

Consolidated Nos. 24-500C & 24-533C
(Filed Under Seal: August 20, 2024)
(Reissued: September 12, 2024)*
**FOR PUBLICATION**

```
*************************************
SUPERIOR OPTICAL LABS, INC.,          *
                                      *
              Plaintiff,              *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
              Defendant,              *
                                      *
              and                     *
                                      *
PDS CONSULTANTS, INC.                 *
d/b/a PDS OPTICAL,                    *
                                      *
              Defendant-Intervenor.   *
                                      *
*************************************
*************************************
SUPERIOR OPTICAL LABS, INC.,          *
                                      *
              Plaintiff,              *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
              Defendant,              *
                                      *
              and                     *
                                      *
PDS CONSULTANTS, INC.                 *
d/b/a PDS OPTICAL,                    *
                                      *
              Defendant-Intervenor.   *
                                      *
*************************************
```

*John E. McCarthy, Jr.*, Crowell & Moring LLP, Washington, D.C., for Plaintiff. With him on briefs were *Zachary H. Schroeder* and *Issac D. Schabes*, Crowell & Moring LLP, Washington, D.C., and *Elizabeth Haws Connally*, Connally Law PLLC, San Antonio, TX.

*Joshua D. Tully*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, *Patricia M. McCarthy*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as *Natica Chapman Neely*, Trial Attorney, United States Department of Veterans Affairs Office of General Counsel, Washington, D.C.

*David S. Gallacher*, Kutak Rock LLP, Washington, D.C., for Defendant-Intervenor. With him on briefs was *Lauren V.T. Irish*, Kutak Rock LLP, Washington, D.C.

## OPINION AND ORDER

Superior Optical Labs, Inc. ("Superior Optical") submitted proposals on two Department of Veterans Affairs solicitations for optician services and eyeglasses manufacturing. When the proposals were rejected, Superior Optical filed two pre-award protests, which this Court consolidated. *See* Compl. (ECF 1) (No. 24-500); Compl. (ECF 1) (No. 24-533); Order (ECF 14). PDS Consultants, Inc. d/b/a PDS Optical ("PDS") — an offeror in both solicitations, and the sole remaining offeror in one — intervened over Superior Optical's objection. 171 Fed. Cl. 50 (2024). The parties have filed cross-motions for judgment on the administrative record, and I have heard oral argument.[1]

---

\* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on August 20, 2024, for the parties to propose redactions of confidential or proprietary information. *See* (ECF 38). Plaintiff filed a memorandum proposing one redaction, which the government opposed. *See* (ECF 40). On the Court's order, the government filed a notice explaining its opposition. *See* Order (ECF 41); Notice (ECF 42). Plaintiff filed a reply, by my leave. *See* (ECF 45). The Court hereby releases publicly the opinion and order of August 20 in full.

The substance of the phrase at issue — the fact that Superior Optical is "not a pass through, and as such will be manufacturing the eyeglasses ourselves at our Ocean Springs, Mississippi based 44,000+ sq. ft. optical laboratory" — appears to have been made public by Superior Optical in other contexts. *See, e.g., Protest of: PDS Consultants, Inc., Protestor Re: Superior Optical Labs, Inc.*, SBA No. CVE-189-P, 2021 WL 2351644, at \*3 (May 6, 2021). "Sealing public information is always improper." *Air Borealis Ltd. P'ship v. United States*, 167 Fed. Cl. 370, 370 n.\* (2023). Superior Optical counters that it could theoretically have changed its manufacturing approach since the procurement involved in that disclosure. But Superior Optical gives no reason — let alone evidence — why it could safely disclose the same information in one context but not here. That leaves no basis to find any prejudice to Superior Optical from disclosure. *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1358 (Fed. Cir. 2011). In addition, the opinion's reasoning hinges on comparing Superior Optical's proposals to the certifications required by the solicitations. Disclosure would therefore advance "the public's interest

The agency rejected the two proposals because of Superior Optical's failure to include the subcontracting certification required by Veterans Affairs Acquisition Regulation ("VAAR") § 852.219-76 (codified at 48 C.F.R. § 852.219-76).[2] Superior Optical contends that in so doing, the agency applied unstated evaluation criteria; misconstrued Superior Optical's proposals; abused its discretion by failing to give Superior Optical an opportunity to correct any deficiencies; and impermissibly converted the one procurement to a sole-source award to PDS.

For the reasons discussed below, Plaintiff's motion is **DENIED** and Defendant's and Defendant-Intervenor's motions are **GRANTED**. The case is **DISMISSED**.

## BACKGROUND

The facts of the case are relatively simple. When Department of Veterans Affairs contracts are set aside for veteran-owned small businesses, the awardees must limit their use of subcontractors. *See* 38 U.S.C. § 8127(l)(1)(A) (cross-referencing 15 U.S.C. § 657s). The point of those "limitations on subcontracting," which also apply to other small-business set-aside contracts, is to ensure that "[w]hen a procurement is set aside … , other businesses are not allowed to sneak in like cowbirds in a robin's nest." *Cf. Accura Eng'g & Consulting Servs., Inc. v. United States*, 167 Fed. Cl. 258, 273 (2023) (addressing the "ostensible subcontractor rule").

In Veterans Affairs contracts, one way of enforcing the limitations on subcontracting is a certification requirement. In procurements governed by those limitations, offerors are only eligible for contracts if they certify compliance with the

in understanding [this Court's] proceedings." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013).

[1] Pl.'s MJAR (ECF 30); Def.'s Cross-MJAR & Resp. (ECF 33) ("Def.'s MJAR"); Int.'s Cross-MJAR & Resp. (ECF 32) ("Int.'s MJAR"); Pl.'s Reply & Resp. (ECF 34); Def.'s Reply (ECF 35); Int.'s Reply (ECF 36); *see also* Administrative Record ("AR") (ECF 25).

[2] In the procurement challenged in the lead case, but not the one challenged in the member case, the agency rejected Superior Optical's proposal for an additional reason — specifically, that Superior Optical also failed to include a copy of the certifications required by Federal Acquisition Regulation ("FAR") § 52.212-3. *See* Compl. at 5–6; AR 791–92. Superior Optical objects to that decision too, *see* Pl.'s MJAR at 1, and neither PDS nor the government has responded in depth. *See* Int.'s MJAR at 19–20 n.12; Def.'s MJAR at 7 n.5; Pl.'s Reply & Resp. at 2–3. The agency's decision to eliminate Superior Optical on that ground is questionable. It is not clear that there is any difference between the regulation's certification requirement and the certification Superior Optical provided. *Compare* FAR § 52.212-3(b), *with* AR 521, 525, 553. Furthermore, Superior Optical submitted an identical certification in its proposal for the solicitation challenged in the member case, *see* AR 1465, and the agency found that certification to be compliant. AR 1525. But even if the agency erred in eliminating Superior Optical on that ground, or if the government and PDS have forfeited their defense, Superior Optical's omission of the VAAR § 852.219-76 certification is enough to resolve the case.

specific limits applicable to them and acknowledge the criminal penalties for false statements:

> The Secretary may award a contract under this section only after the Secretary obtains from the offeror a certification that the offeror will comply with the requirements described in paragraph (1)(A) if awarded the contract. Such certification shall—
>
> (A) specify the exact performance requirements applicable under such paragraph; and
>
> (B) explicitly acknowledge that the certification is subject to section 1001 of title 18.

38 U.S.C. § 8127(l)(2).

The agency has implemented that statutory command by regulation. One regulation specified the exact text and form of the required certification. *See* VAAR § 852.219-76. Two others repeat the statutory requirement that offerors must certify compliance with limitations on subcontracting to be eligible for award. VAAR §§ 819.7003(d), 819.7004(b).[3]

Most relevant for this case, the agency has also provided that the required certification must be provided *in the proposal*, and that it will not even evaluate proposals without one:

> The formal certification must be completed, signed and returned with the offeror's bid, quotation, or proposal. The Government will not consider offers for award from offerors that do not provide the certification, and all such responses will be deemed ineligible for evaluation and award.

VAAR § 852.219-76(d); *see also* VAAR § 819.7004(b)(2) ("The Government will not consider offers for award from offerors that do not provide the certification with their bid, quotation, or proposal, and all such responses will be deemed ineligible for evaluation and award.").[4]

---

[3] Although Superior Optical disputes their relevance, *see* Pl.'s Reply & Resp. at 12 n.5, both regulations are plainly part of the regulatory background governing the solicitations. VAAR § 819.7003(d) refers to VAAR § 819.7004(b); that regulation cross-references an earlier codification of 38 U.S.C. § 8127(l)(2), as well as VAAR § 819.7011, which itself cross-references VAAR § 852.219-76.

[4] The agency issued a class deviation that changed VAAR §§ 817.7004 and 852.219-76. *See* VA Memorandum, Feb. 16, 2023, "VA Acquisition Regulation (VAAR) Class Deviation to Make Conforming Changes Required by the Small Business Administration Veteran Small Business Certification Program; Various Parts." This class deviation was incorporated by reference into the VISN 7 procurement, *see* AR 481–83, 513, but not in the VISN 15 procurement. However, the class deviation merely established an additional certification procedure for certain types of small businesses, and it did not meaningfully change the text of the regulations at issue in this case.

There are two solicitations in these consolidated protests: The lead case arises from No. 36C24724R0024, for services in the agency's Veterans Integrated Services Network ("VISN") 7, while the member case arises from No. 36C25524R0020, for services in VISN 15. AR 4, 809. The solicitations were both issued as set-asides for service-disabled veteran-owned small businesses. AR 365 (VISN 7), 809 (VISN 15). Both solicitations, in their Section C - Contract Clauses, provide the full text of VAAR § 852.219-76, including the text of the certification and the language providing that proposals without the certification will not be considered. AR 483–85 (VISN 7), 1188–90 (VISN 15).

The two solicitations also contain a Section E with proposal instructions, which address the certification in slightly different ways. The VISN 15 solicitation stated that offerors "must follow the instructions contained herein," and that they "are required to meet all solicitation requirements, including terms and conditions, representations and certifications, and technical requirements." AR 1265. It also stated that "[f]ailure to meet a requirement will result in an offer being ineligible for award." *Id.* Although the solicitation included instructions for document submissions, those instructions did not specifically mention the VAAR § 852.219-76 certification. Instead, they required offerors to "explain in detail how you will conform with either the limitations on subcontracting as a manufacturer described in 13 CFR 125.6 or with the nonmanufacturer rule described in 13 CFR 125.6 and 13 CFR 121.406." AR 1267.

The VISN 7 solicitation, in contrast, stated that offerors "shall included [sic] a complete and signed copy of VAAR § 852.219-76 VA NOTICE OF LIMITATIONS ON SUBCONTRACTING[.]" AR 513. It also contained general exhortations about documentation requirements and the consequences of error:

> All proposals received without requested documentation will not be considered. Failure to comply with **ALL** criteria as set forth by the solicitation and **ALL** documentation requested on this basis of award will result in your proposal being rejected and, therefore, not evaluated. … **Not providing all the required documents above or not following the instructions for submission will result in the rejection of a quote.**

AR 514.

Superior Optical submitted proposals for both solicitations, but did not include the required certification in the required form. Instead, both proposals contained the following statement:

> Superior is a full-service eyeglass manufacturer, not a pass through, and as such will be manufacturing the eyeglasses ourselves at our Ocean

- 5 -

Springs, Mississippi based 44,000+ sq. ft. optical laboratory. As a result, we will be in full compliance with the limitations on subcontracting as a manufacturer as described in 13 CFR 125.6.

AR 554 (VISN 7); 1468 (VISN 15). The agency rejected both proposals for failure to meet the VAAR certification requirement, AR 791–92 (VISN 7), 1528 (VISN 15), precipitating the current litigation.[5]

## DISCUSSION

### I. Legal Standards

#### A. Jurisdiction

To reach the merits of the case, I must first determine that the Court has jurisdiction over Superior Optical's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). This Court's jurisdiction in bid protests rests on the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a)–(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)); *see Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 464–65 (2008). The Tucker Act now grants this Court jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to … the award of a contract or any alleged violation of statute or regulation in connection with a procurement[.]" 28 U.S.C. § 1491(b)(1). Under the Tucker Act this Court has jurisdiction over the subject matter.

Superior Optical must also have standing to challenge the contract award. Superior Optical has Article III standing because it claims an injury — specifically, rejection of its bid — which is traceable to the allegedly defective procurement process and which could be redressed by this Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Until recently, the Tucker Act's requirement that only an "interested party" could file a bid protest was considered a "threshold jurisdictional issue" too. *See Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002). The Federal Circuit has clarified that the "interested party" requirement goes only to "statutory standing," and is therefore not jurisdictional in a strict sense. *CACI,*

---

[5] Superior Optical argues that the agency actually considered its proposals complete and conducted a substantive review, citing language in the agency's review checklists. *See* Pl.'s Reply & Resp. at 7–8, 11 (citing AR 788, 1524). But I see nothing resembling a technical review, and the same checklists faulted Superior Optical for omitting the certifications. *See* AR 788 (VISN 7), 1525 (VISN 15). In context, the language Superior Optical cites verified that the proposals were timely, *see* AR 788 (VISN 7), or properly organized, *see* AR 1524 (VISN 15). There is no way to read the administrative record as reflecting a decision to overlook the absence of the required certifications. The agency's intention to reject the proposals without a technical evaluation is perfectly obvious.

*Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023) (holding that *Myers Investigative* is abrogated in that respect); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 119, 128 n.4 (2014) (explaining that statutory standing relates not to jurisdiction but to "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim"). When a protestor "challeng[es] the … determination that [the protestor's] own bid had disqualifying deficiencies," statutory standing overlaps with the merits. *CACI*, 67 F.4th at 1152.

The Federal Circuit has developed a two-part test for "interested party," requiring that a plaintiff show it (1) is an "actual or prospective bidder," and (2) "possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing *Myers Investigative*, 275 F.3d at 1369 (itself citing *Lujan*, 504 U.S. at 561)). There is no dispute that Superior Optical is an actual bidder. Furthermore, neither the government nor PDS disputes that Superior Optical has a "direct economic interest." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). In a pre-award bid protest, because "it is difficult for a prospective bidder/offeror to make the showing of prejudice … required in post-award bid protest[s]," a direct economic interest exists if the protestor has alleged "a non-trivial competitive injury which can be redressed by judicial relief." *See id.* at 1361–62.[6] But for the agency errors that Superior Optical alleges in its complaints, its proposals would have been found to be acceptable, and Superior Optical would have been allowed to compete for the VISN 7 and 15 contracts. *See* AR 788, 1524–25. I find that this constitutes a "non-trivial competitive injury." *See Piedmont Propulsion Sys., LLC v. United States*, 167 Fed. Cl. 72, 89 (2023) (citing *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1349 (Fed. Cir. 2013)).

## B. Standard of Review

This Court reviews bid protests "pursuant to the standards set forth in section 706 of title 5," *i.e.*, the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). That standard requires the Court to consider whether the contracting agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (ASIA), PTE Ltd.*

---

[6] "A higher standard, under which the protestor must show that 'but for the error, it would have had a substantial chance of securing the contract,' applies where 'there is an adequate factual predicate' to apply it." *eSimplicity, Inc v. United States*, 162 Fed. Cl. 372, 381 n.9 (2022) (quoting *Savantage Fin. Servs., Inc. v. United States*, 150 Fed. Cl. 307, 317–18 (2020)). Here, although Superior Optical submitted a bid, there is not sufficient factual development to permit me to apply the "substantial chance" test — for example, the agency has not yet established a competitive range to which we can compare Superior Optical's proposal. *See Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1349 (Fed. Cir. 2013).

*v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). There are two bases for setting aside government procurements as arbitrary and capricious: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000).

The first route involves determining "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1332–33 (quotes omitted) (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). To succeed in that way, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Id.* at 1333 (quotes omitted) (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994)). The second route requires "the disappointed bidder [to] show a clear and prejudicial violation of applicable statutes or regulations." *Id.* (quotes omitted) (quoting *Latecoere Int'l*, 19 F.3d at 1356).

When resolving motions for judgment on the administrative record under Rule 52.1(c), this Court proceeds "as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1354 (addressing former RCFC 56.1); *see also Young v. United States*, 497 F. App'x 53, 58–59 (Fed. Cir. 2012).

## II. <u>Merits</u>

The basic problem for Superior Optical is that the relevant regulation, which was reprinted verbatim in the solicitations, is explicit and unambiguous: no certification, no consideration of a proposal. VAAR § 852.219-76(d). None of Superior Optical's arguments come close to overcoming that hurdle, so the protests can be rejected with ease.

First, Superior Optical claims that the limitation on subcontracting certification requirement was an unstated evaluation criterion. Pl.'s MJAR at 13–20. There is no dispute that solicitations must disclose all requirements for proposals. *eSimplicity v. United States*, 162 Fed. Cl. 372, 379 (2022). An agency violates that requirement when it evaluates proposals "us[ing] a significantly different basis … than was disclosed" in the solicitation. *Id.* (quoting *Banknote Corp. of America, Inc. v. United States*, 56 Fed. Cl. 377, 386 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004)). But there is no sense in which the certification requirement was undisclosed: It was right there all along, not only in the regulation, but in the terms of both solicitations.

The specifics of Superior Optical's argument are even stranger. According to Superior Optical, the two solicitations were not explicit enough in Section E — which

contained instructions for offerors and information about the agency's review process — that a certification was required. Pl.'s MJAR at 13–20.

That is absurd as to VISN 7, where Section E specifically called for the VAAR § 852.219-76 certification and stated that proposals missing required documents would be rejected. AR 513–14. Superior Optical's argument appears to be that the certification is not mentioned in a later portion of Section E describing the technical evaluation of proposals. Pl.'s MJAR at 18–20; *see* AR 520. But Superior Optical cites no authority for the proposition that formal requirements must be addressed at the technical evaluation stage, rather than as a matter of threshold acceptability, let alone for why the agency would have to reiterate the certification requirement there. Even the part of Section E that Superior Optical relies on states that an award could only be made on an "offer conforming to the solicitation." AR 520. In other words, only proposals meeting solicitation requirements (*e.g.*, the necessary certifications, timely submission, and so forth) were entitled to award.[7] Because Superior Optical's proposal did not meet those requirements, the technical evaluation criteria give it no help.[8]

Superior Optical's argument is only slightly less preposterous as to the VISN 15 solicitation. The instructions to offerors in Section E of the VISN 15 solicitation required certifications more generally; while it mentioned some certifications in a checklist of required documents, it did not include VAAR § 852.219-76. AR 1267. But its direction to meet "all solicitation requirements, including … certifications" literally covers each certification mentioned by Section C. AR 1265.

As in the VISN 7 solicitation, the offeror instructions in Section E of the VISN 15 solicitation stated that "[f]ailure to meet a requirement will result in an offer being ineligible for award." *Id.* The description of the agency's evaluation, moreover, was even more explicit than the one in VISN 7: Besides stating that only "offer[s] conforming to the solicitation" were eligible, the agency repeated that "[p]roposals that are incomplete or otherwise fail to follow the instructions to offerors will be

---

[7] The parties argue over whether the VAAR § 852.219-76 certification requirement is an "evaluation criterion" or something else. Def.'s MJAR at 9; Int.'s MJAR at 24; Pl.'s MJAR at 13–20. The basic rule is that an agency's disclosure obligation "extends to *every* basis the agency might rely on to accept or reject a bid." *eSimplicity*, 162 Fed. Cl. at 379. The government cannot avoid that obligation by playing word games with how a criterion is designated. By the same token, as long as a solicitation accurately states a criterion and what role it plays in the agency's procurement decision, an offeror cannot claim that it is unstated.

[8] Superior Optical relies heavily on a misreading of *Konecranes Nuclear Equipment & Services, LLC v. United States*, 165 Fed. Cl. 421 (2023). That case held that a cross-reference in a solicitation's proposal instructions to the solicitation's statement of work did not impliedly import all the work performance standards as evaluation criteria. *Id.* at 430–31. That proposition does Superior Optical no good.

removed from the competition and not considered for award." AR 1277. Because the VAAR § 852.219-76 certification requirement was included in Section C, AR 1185–88, it was one of the certifications required by the instructions to offerors, AR 1265, and its omission disqualified Superior Optical's proposal — again, just as the solicitation said. AR 1265, 1277.

At most, Superior Optical might have considered the VISN 15 solicitation ambiguous as to whether it in fact required a VAAR § 852.219-76 certification. But if there were ambiguity, it could only be because of a potential contradiction between Section C, which included the language requiring a certification, and Section E, which Superior Optical argues does not. That is a classic example of what this Court and the Federal Circuit refer to as a "patent" ambiguity. *See, e.g.*, *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312 (Fed. Cir. 2016) ("A defect is patent if it is an obvious omission, inconsistency or discrepancy of significance.") (quotes omitted) (quoting *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004)); *VSolvit, LLC v. United States*, 166 Fed. Cl. 201, 217 (2023) (citing *Per Aarsleff*, 829 F.3d at 1312).

And that leads to a quick dead end for Superior Optical too: Offerors must bring patent ambiguities in solicitations to the agency's attention before submitting proposals, or else forfeit arguments over those ambiguities in this Court. *See Accura*, 167 Fed. Cl. at 270 (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007), and *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382–83 (Fed. Cir. 2012)). Even if different parts of the solicitations pointed in different directions,[9] Superior Optical did not ask the agency whether it was required to include a certification before submitting its proposal.

A proposal that does not comply with material terms expressed in a solicitation cannot receive an award. *E.g.*, *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996). That rule obviously applies here, where not only was the requirement there for everyone to see, but the consequences for noncompliance were too. The regulations said that noncomplying proposals would be rejected. VAAR §§ 819.7003(d), 819.7004(b). So did both solicitations. AR 514 (VISN 7), 1110 (VISN

---

[9] Superior Optical distinguishes *Blue & Gold* on the ground that the case does not "require offerors to seek clarification pre-award regarding an agency's decision not to include evaluation requirements for certain contract clauses." Pl.'s Reply & Resp. at 6. It also claims that it lacked an opportunity to object earlier because its claims arose from the agency's review, or because any ambiguity was latent and therefore outside the scope of the *Blue & Gold* waiver rule. *Id.* at 7 & n.2. Those arguments are no more than legally unsupported denials of the factual record: The agency *did* include the certification requirement in both solicitations, and it stated that proposals missing certifications would be rejected. Superior Optical's claims thus do not go to agency evaluation processes, but to the meaning of the solicitations' terms. Nor does Superior Optical cite any authority characterizing any similar ambiguity as latent.

15). When Superior Optical's proposals were rejected, it had no possible reason to be surprised.

Superior Optical argues at length that the certification requirement was not "material," claiming that the requirement is unnecessary or superfluous and can therefore be overlooked. Pl.'s Reply & Resp. at 11–17. A solicitation requirement is material when it "(1) is express in the solicitation, and (2) serves a 'substantive purpose.'" *DigiFlight, Inc. v. United States*, 150 Fed. Cl. 650, 657 (2020) (citing *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 506 (2019) (itself citing *Bus. Integra, Inc. v. United States*, 116 Fed. Cl. 328, 333 (2014))). Whether a requirement serves a substantive purpose, though, is for the agency to decide — not this Court. *WaveLink, Inc. v. United States,* 154 Fed. Cl. 245, 273 (2021). A material provision can simply be one that is "important to the government's evaluation of the offer" or that the government makes "binding on the offeror." *DigiFlight*, 150 Fed. Cl. at 657. The agency plainly considers the certification requirement "important" and "binding," given its mandatory terms derived from statutory and regulatory commands. AR 514 (VISN 7) ("Not providing all the required documents above or not following the instructions for submission will result in the rejection of a quote."), 1110 (VISN 15) ("Offerors are required to meet all solicitation requirements, including … representations and certifications[.] … Failure to meet a requirement will result in an offer being ineligible for award."). That makes the requirement material.

Superior Optical cites no authority suggesting that a categorical proposal submission requirement — based on a regulatory direction that itself implements a command of Congress — can be ignored as non-material when an offeror does not comply. Nor does Superior Optical present any argument that requiring the certification in the proposal, as the agency did in VAAR § 852.219-76, was an invalid exercise of agency authority. Given that the agency considers the offer-stage certification crucial enough to reject proposals that omit it, this Court has no business deciding that the regulation is not worth applying according to its explicit terms.[10]

Superior Optical's materiality argument thus amounts largely to a disagreement with Congress's decision to require a certification and the agency's decision to promulgate VAAR § 852.219-76: Offerors would be subject to the substantive obligations and penalties mentioned in the certification whether they sign or not, so what difference does the certification make? Pl.'s Reply & Resp. at 13–

---

[10] That is, of course, a double-edged sword for the agency. Agencies can waive minor errors in proposals, but not material ones. FAR § 14.405; *see ManTech*, 141 Fed. Cl. at 506 ("Because [the agency] only had the discretion to waive 'informalities and minor irregularities,' [the agency] cannot waive errors that were rationally categorized as material."). Creating a mandatory requirement like the one here thus creates a risk that potential offerors will forfeit consideration of their proposals, but it also constrains agency discretion.

17. But Superior Optical is wrong to suggest that a certification only matters if it changes the rules governing the signer's conduct. A certification might, for example, eliminate ambiguity about the exact nature of an offeror's legal obligations, or make sure that the offeror has waived its defenses as to those obligations. Superior Optical therefore cannot simply wish away Congress's decision that a "specific[ation]" of applicable subcontracting limitations and an "explicit[] acknowledg[ment]" of penalties are necessary for a proper certification, *see* 38 U.S.C. § 8127(l)(2)(A), (B), nor the agency's decision to require that the certification be presented with the offer.

Second, Superior Optical argues that even if a certification was in fact required, its proposals satisfied the substance, and it was therefore arbitrary and capricious of the agency to reject the proposals based on form alone. Superior Optical emphasizes that although its proposals did not mention VAAR § 852.219-76, they did promise compliance with 13 C.F.R. § 125.6, a different regulation related to limitations on subcontracting. *See* Pl.'s MJAR at 22–23; AR 554. That argument ignores the regulations too: If the government wants a given certification, offerors should give it the certification. VAAR §§ 819.7003(d), 819.7004(b), 852.219-76. When a solicitation requires that given information be presented in a particular way and an offeror does not comply, the agency is not ordinarily expected to make up the difference by cobbling the substance together itself. *See Allicent Tech., LLC v. United States*, 166 Fed. Cl. 77, 150–51 (2023).[11]

Besides, even if the agency had tried to piece together the substance of a limitation on subcontracting certification in the two proposals, it would not have found everything that was required. The governing statute requires that a compliant certification "*specify* the *exact* performance requirements applicable" to the offeror, *see* 38 U.S.C. § 8127(l)(2)(A) (emphasis added), a requirement the agency implements with checkboxes for selecting which limitations apply. VAAR § 852.219-76; *see* AR 483–85 (VISN 7), 1188–90 (VISN 15). The statute requires that offerors "*explicitly acknowledge* that the certification is subject to section 1001 of title 18," a criminal statute setting out penalties for false statements and concealment. 38 U.S.C. § 8127(l)(2)(B) (emphasis added); 18 U.S.C. § 1001. The regulation further requires an acknowledgement that bad faith or noncompliance carries the risk of particular criminal, civil, or administrative penalties and an acknowledgement of a duty to comply with the agency's investigatory powers. VAAR § 852.219-76.

---

[11] Superior Optical cites *Accura Engineering & Consulting Services, Inc. v. United States* for the proposition that sometimes an agency "must look past the form of a certification and consider whether an offeror would satisfy the substance," 167 Fed. Cl. at 274; *see* Pl.'s MJAR at 21. That case cites decisions standing for the proposition that sometimes an agency should consider whether an offeror's facially valid certification is factually accurate. It has no obvious bearing on Plaintiff's argument that the agency was obligated to overlook the *lack* of a required certification.

Superior Optical's proposals fell short of those requirements. Its 13 C.F.R. § 125.6 statements asserted that it was a manufacturer but did not mention the performance requirements specifically. The statements did not acknowledge Section 1001 or other penalties at all and made no mention of compliance with investigations. AR 554 (VISN 7), 1468 (VISN 15). Superior Optical points to no place else that makes up for those omissions. The proposals therefore did not include the exact material required by the statute, its implementing regulation, or the solicitations.

The difference is substantive, not purely formal. As mentioned above, a certification can have the effect of eliminating ambiguity and waiving legal defenses even if it does not otherwise change the applicable law. The only way for the agency to obtain that result is a voluntary certification from an offeror. Superior Optical's proposals, including its 13 C.F.R. § 125.6 statements, thus omit material relevant to the certification's substantive purpose.

Superior Optical also argues that its SF 1449 — a cover page accompanying the proposals — impliedly bound it to all the solicitations' terms, including the limitation on subcontracting. Pl.'s MJAR at 27. Yet Superior Optical provides no authority suggesting that an SF 1449 is equivalent to certifications that are separately required by regulation. The form itself says nothing about certifications or acceptance of a solicitation's terms. *See* AR 546 (VISN 7), 1356 (VISN 15). Even setting aside the limitations on subcontracting, the solicitations require particular certifications in addition to the SF 1449, *see* AR 512–13 (VISN 7), 1188, 1265 (VISN 15), and Superior Optical provided several of them, AR 553 (VISN 7), 1465–71 (VISN 15), which would be illogical if either the agency or Superior Optical genuinely considered the SF 1449 to cover the certifications. And assuming the SF 1449 did bind Superior Optical to all the terms in the solicitations, those terms included not just compliance with the limitations on subcontracting, but a *certification* as to those limitations. *See* AR 483–85 (VISN 7), 1188–90 (VISN 15); *see also* AR 481–83 (VISN 7), 1188–90 (VISN 15). Superior Optical's argument thus fails even on its own terms.

Third, Superior Optical says that the agency should have given it an opportunity to correct any defects before rejecting the proposals. Superior Optical relies on regulations allowing agencies to conduct "clarifications" when deciding whether to accept a proposal. *See* Pl.'s MJAR at 29–31 (citing FAR § 15.306(a)). But offerors may not use the clarifications process to correct material noncompliance with mandatory solicitation requirements or procurement law. *See Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018) ("Clarifications are not to be used to cure proposal deficiencies or material omissions … or otherwise revise the proposal.") (quoting *JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 661 (2002)).

- 13 -

Whatever the bounds might be of an agency's discretion to conduct clarifications, they do not extend this far. The relevant language in the regulation and the solicitations left the agency no discretion: Having said that noncomplying proposals would be rejected, AR 513–14 (VISN 7), 1265 (VISN 15), when it appeared that Superior Optical's proposals were not compliant, the agency had to reject them. *See A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 139–40 (2006); *Dismas Charities, Inc. v. United States*, 75 Fed. Cl. 59, 61 (2007). The agency might, in fact, have acted arbitrarily and capriciously if it had *not* done so. *ViON Corp. v. United States*, 122 Fed. Cl. 559, 575–76 (2015); *see also Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1329 (Fed. Cir. 2011) ("[A] proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations.") (quoting *E.W. Bliss Co.*, 77 F.3d at 448).

Superior Optical cites no authority allowing an agency to conduct clarifications in circumstances remotely like these. Superior Optical's lead case, *Griffy's Landscape Maintenance LLC v. United States* — which found the government was obligated to give an offeror the opportunity to add an omitted telephone number — distinguished its facts from circumstances where a regulation "explicitly stated that proposals without a certificate must be rejected." 46 Fed. Cl. 257, 261 (2000). Other cases authorize clarifications to correct "clerical errors, when all material information required by the solicitation is present," *DMS All-Star Joint Venture v. United States*, 90 Fed. Cl. 653, 666 n.16 (2010), or to add omitted signatures "where the submission includes other material indicating the bidder's intent to be bound," *Strategic Bus. Sols., Inc. v. United States*, 129 Fed. Cl. 621, 629 (2016), *aff'd*, 711 F. App'x 651 (Fed. Cir. 2018). But in this case the "material information" was the completed form itself, and the document indicating "intent to be bound" was not merely unsigned, but entirely missing.

Fourth, and finally, Superior Optical claims that because the agency's review has eliminated every offeror from the VISN 7 procurement except PDS, the agency has violated "the [Competition in Contracting Act's] mandate to increase competition." Pl.'s MJAR at 36. The Competition in Contracting Act ("CICA") serves the policy of improving competition in government contracting. *See* 41 U.S.C. § 3301(a)(1); *Savantage Fin. Servs., Inc. v. United States*, 81 Fed. Cl. 300, 306 (2008). But it does not follow that the statute compels any given procurement decision that could further that policy. As the Supreme Court has said, statutes do not pursue their purposes absolutely, but only in combination with other goals and constraints. *See Alvarez v. United States*, 169 Fed. Cl. 96, 101 (2023) (citing *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (*per curiam*), and Frank H. Easterbrook, *Statutes'*

*Domains*, 50 U. Chi. L. Rev. 533, 541 (1983)). Unadorned appeals to statutory policy, in other words, are generally not enough to show how a given law should resolve a particular case. *Id.* (citing *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017)).

Here, Congress has expressed a policy for competition in contracting, but CICA furthers that policy in specific ways — not in others. Meanwhile, Congress has also placed specific substantive limits on subcontracting and procedures for enforcing those limits, 38 U.S.C. § 8127(l); 15 U.S.C. § 657s(a), and it has permitted agencies to establish the required form for proposals. 41 U.S.C. §§ 1303, 1707; 48 C.F.R. §§ 1.301–1.304. Superior Optical does not argue that CICA impliedly repeals any of those provisions, let alone that a general policy in favor of competition is enough to compel agencies to accept noncompliant proposals. *See CGS-ASP Sec., JV, LLC v. United States*, 162 Fed. Cl. 783, 818–19 (2022). In the absence of any argument or authority linking CICA to the issues in the case or the specific shortcomings of Superior Optical's proposals, CICA's general policies are irrelevant.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is **DENIED** and Defendant's and Defendant-Intervenor's motions are **GRANTED**.

Pursuant to the Court's April 12, 2024, Protective Order (ECF 15), this Opinion has been issued under seal. The parties shall have two weeks to propose redactions and, accordingly, shall file notice of their proposed redactions no later than **September 3, 2024**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum explaining why redactions are necessary for each item of information for which a redaction is proposed.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge